The St. Louis Perpetual Insurance Company vs. Hyam H. Cohen.

THE ST. LOUIS PERPETUAL INSURANCE COMPANY vs. HYAM H. COHEN.

1. It is the duty of the appellant to show by the record that error had been committed. And if a record be susceptive of two interpretations, that will be given which will sustain the judgment of the inferior court.

2. Sworn copies of written instruments are admissible, when the originals are beyond the jurisdiction of the court.

3. A certificate of deposit to "S. B. Knapp, Cashier," although the funds deposited be shewn to belong to the Bank of which he was cashier, may be transferred by Knapp. And when transferred, even in bad faith by Knapp, if they come in the hands of an innocent holder, he will hold them against the Bank.

Van Arsdale & Warnock vs. John M. Krum, Judge, &c.

4. A foreign corporation may be sued in the courts of this State by attachment.

5. A corporation may be summoned as a garnishee, and its answer be verified as in chancery.

6. A garnishee can take no advantage of any error in the proceedings against the defendant, if the court have jurisdiction of the cause.

APPEAL from St. Louis Court of Common Pleas.

GAMBLE & BATES, for Appellants.

POINTS AND AUTHORITIES.

1. The court erred in admitting the copies of instruments annexed to the deposition of Jones. There was no evidence offered of any thing to prevent the production of the originals.

2. The court erred in permitting the plaintiff to read in evidence the record from New York; and this error is not cured by the court afterwards on the plaintiff's motion, telling the jury that the record was not before them.

3. The court erred in giving to the jury instructions that were directly contrary to each other, and which were calculated to mislead the jury.

4. The burden of proving the right of the defendant (the Mineral Point Bank) to the effects attached, at the time they were attached, rests upon the plaintiff, as is asserted in the 2d instruction given for the garnishee, and is not to be presumed, as is asserted in the 8th instruction given for the plaintiff. Scott & Rule vs. Hill & McGunnegle, 3rd Mo. Rep. 88.

5. The form in which the certificates of deposit were issued, being to the order of Knapp, Cashier, did not of itself, nor even accompanied by the fact, that the Bank or its agents had possession of the certificates, constitute the Bank the creditor of the garnishee without proof of other facts; and especially with the admission that the money deposited was not previous to the deposit, the money of the Bank, as in the defendant's third instruction, is supposed. Even if the funds deposited actually belonged to the Bank, that fact could only give to the Bank an *equitable* not *legal* title to the certificates; and attachment being "*stricti legis*," an equity is not attachable.

6. The funds of Samuel B. Knapp, as an individual, did not by the mere act of deposit to the credit of the owner, the Cashier of the Bank,

27

become the property of the Bank, as is asserted in plaintiff's 6th instruction.

7. The attachment in this case did not cover any indebtedness of the garnishee to the Mineral Point Bank, which might have arisen by the Bank *becoming the owner of the certificates of deposit, after the attachment was levied;* and moreover such case was not embraced in the issue, and therefore plaintiff's seventh instruction should not have been given. Rev. Code of 1835, p. 77, last clause of sec. 6.

8. If the funds deposited, and the certificates of deposit had been the property of the bank, still if by the laws of Wisconsin, where the bank was located, the certificates and the rights evidenced thereby had become vested in receivers appointed under the laws of that territory, before the attachment in this case was levied, and such receivers there had the lawful and rightful possession of the certificates, the issue should have been found for the garnishee. Story's Conflict of Laws.

9. The court ought to have granted a new trial. The evidence upon the subject of the ownership of the certificates of deposit, is all on one side, being all given by the plaintiff; and that evidence instead of showing the bank to be the owner at the time of the attachment, shows that they were passed to Brooks.

10. The court should have discharged the garnishee, notwithstanding the verdict, or should have arrested the judgment, which in this case is the same thing. This point turns on the effect of the judgment recovered by Little & Co. in New York, which is set up in the answer and not denied.

11. The court erred in admitting parol evidence and in refusing to strike it out of the deposition of the appointment of receivers or trustees of the bank.

12. The defendant being a corporation aggregate, existing in a foreign jurisdiction, is not sueable here by attachment. 16 John. Rep. p. 6; McQueen vs. Middletown Manufacturing Company.

13. Moreover, at the time of the bringing of this suit, the said bank was defunct, and not capable of being made a defendant, so as to warrant a proceeding against a garnishee.

14. The St. Louis Perpetual Insurance Company being a corporation aggregate, is not liable to be made, and is legally incapable of being a garnishee under our attachment law. It cannot be summoned except in the particular way pointed out by law. See R. C. title, Corporation. It cannot answer on oath, as required by the act; and if it refuse, cannot be compelled to answer at all.

The St. Louis Perpetual Insurance Company vs. Hyam H. Cohen.

GEYER, for Appellee.

POINTS AND AUTHORITIES.

1. The question attempted to be raised by the appellant, whether a corporation aggregate can be sued as defendant, or summoned as garnishee in attachment, is not presented by the record in this case. The appeal does not bring up for review the record and proceedings in the principal action. A garnishee cannot take advantage of irregularity in the proceedings between the parties to the action. 6 Porter's (Ala.) Rep. 265; 5th Alabama Rep. N. S. 414. No question was made in the court below, involving the question of liability of the defendant to the proceedings by attachment, except in overruling the motion of a stranger, and even that decision was not excepted to; and therefore that decision is not the subject of review. Butcher vs. Keil et al., 1st Mo. Rep. 187 ; Swearingen vs. Newman, Adm'r 4 ib. 456.

There was no plea to the jurisdiction of the court, and no claim to exemption by the garnishee in the court below, until after submission to answer and a verdict for the plaintiff,- which was too late. Again : It does not appear that either the defendant or garnishee was a corporation aggregate, foreign or domestic ; and if it did, there is no assignment of error on the decision of the court, in respect to the liability of the defendant or garnishee as a corporation to attachment or garnishment.

2. Even if the record and assignment of error shall be understood to bring up the question of the liability of a foreign corporation to attachment, or of a domestic corporation to garnishment, the judgment against the garnishee cannot for that cause be reversed. A foreign corporation is liable to be sued in any State, where service of process can be made upon it or its property according to the laws of such State. Lebby vs. Hodgdon, 9th New Hamp. Rep. 394. An attachment may be levied on its property found in the State. Bushel vs. Commercial Insurance Company, 15th Sergt. & R. 173 ; Knox vs. Protection Insurance Company, 9th Conn. Rep. 430. ₍A corporation, foreign or domestic, may be held as trustee or guardian. 9 N. H. Rep. 394–9 ; Com. Rep. 430. If the law requires the garnishee to answer on oath, a corporation garnishee verifies its answer by the corporate seal. Callahan ys. Hallowell, 2d Bay, 10.

3. The first assignment of error is the admission of incompetent evidence offered by *the appellant*, an error of which the *appellant* cannot complain. The ruling of the court below in the admission of evidence,

offered by the appellee, is not assigned for error, and consequently not subject to review.

4. It does not appear by the record that any incompetent evidence was given on the part of the appellee. The record of the court in New York was exhibited by the garnishee in his answer to part thereof, and properly read to show the time of the commencement of the suit; and this is all the effect given to it, as will be seen by the instructions given to the jury. What the witnesses say of the appointment of receivers, is merely an explanation of the nature of the possession of the certificates, and negatives any presumption that might otherwise arise that they claimed in their own right. It is not an attempt to prove their authority, or the contents of a commission or other writing. It does not even appear that there was any written or record evidence of the appointment, a fact which, if it existed, the objecting party was bound to show. That part of the evidence objected to which describes the certificates seen in possession of the receivers, was clearly competent: it was not evidence, nor offered as evidence of the contents of a writing, or its purport or effect, but of description, for the purpose of identifying them. As to the copy of the agreement appended to the deposition, it was clearly admissible as secondary evidence, it appearing that neither the original nor its keeper was or is within the power of the plaintiff, or within the reach of the process of the court.

5. The objections to evidence in the court below were too general. "Where an objection is made to the introduction of evidence, the bill of exceptions should state the specific grounds upon which the objection is made; for unless the party points out the specific objections in the circuit court, and the bill of exceptions shows what those objections were, the case may be decided in one point in the circuit court and reversed on another in the supreme court." Fields vs. Hunter, 8th Mo. Rep. 128. The rule which requires the specification of the objections, applies with great force to cases where particulars might be supplied.

6. The second assignment of error is too general and indefinite to be available to the plaintiff. It alledges misdirection generally, without any reference to the instruction complained of, and upon the supposition that instructions were given at the request of both parties, the assignment of error comprehends both, without distinction, or neither.

7. It does not appear that any instructions prayed for by the plaintiff, and given, were excepted to in such manner as to make the error (if any) therein available to the plaintiff. The bill of exceptions shows that the instructions, eight in number, were excepted to, and the exception both *overruled and allowed.* Thus the exception destroys it-

self, and is of no avail. Nothing can be intended in favor of the party excepting. Where a bill of exceptions is doubtful and ambiguous, the court will not intend any thing for the benefit of the party whose duty it was to make the matter plain. Collins vs. Bowmer, 2d Mo. Rep. 158. The interpretation of the bill of exceptions, most favorable to the appellant, would be that the three last of the eight instructions were refused, and the five first given. This may be inferred, if any intendment is allowed from what follows the exceptions in the bill.

8. Mere misdirection, or admission, of incompetent testimony, is not of itself sufficient to authorize the reversal of the judgment, if upon the whole case it appears to have been given for the right party. Newman vs. Lawless, 6 Mo. Rep. 301; Neal vs. McKinstry, 7 Mo. Rep. 128; Finney et al. vs. Allen, 7 Mo. Rep. 416; Vaulx vs. Campbell, 8th Mo. Rep. 224. This acknowledged principle applied to the case at bar will affirm the judgment.

9. The decisions of the court in giving and refusing instructions were substantially correct, and the verdict and judgment according to the merits of the case. That the funds deposited were at the time of the deposit the property of the defendant in the action, is established by the evidence and found by the jury: that they continued to be the property of defendant, is determined by the law of the case and the facts in evidence.

*First*, The fact that the funds when deposited were the property of the defendant, is evidence that they continued such, unless the contrary be shown. The case of Scott & Rule vs. Hill & McGunnegle, 3d Mo. Rep. 88, was decided by a divided court, and the weight of reasoning is decidedly with the dissenting judge. The opinion is by its terms applicable only to negotiable instruments. In the case at bar, there is no such instrument. It is properly not transferable, except by delivery, or by a transfer on the books of the defendant as equivalent to a delivery.

*Second*, Assuming that this case is within the principle of the case of Scott & Rule vs Hill & McGunnegle, it is sufficient to show that the possession was in persons claiming to hold for the defendant and not in their own right, especially when according to the facts appearing they could have no right to hold. If the garnishee intended to affirm that the possession divested the title of the defendant, it was incumbent on it to prove that the receivers were duly appointed such.

*Third*, The receivers had no authority under their appointment to transfer the funds, or bargain with others touching them; and if they

had, they did not make any valid transfer until after the attachment levied.

*Fourth,* Even if a complete record of the appointment of the receivers, and a compliance of the law on their part may be presumed under the state of the case, still there was no transfer of property in this State as against an attaching creditor. The effect of the proceeding under the law of Wisconsin, is the same as that of a commission in bankruptcy and an assignment under bankrupt laws, in which the attachment has priority. 2 Kent's Com. 404; Blake vs. Williams, 6 Pick. 284; Oliver vs. Town, 14 Martin, La. Rep.; 6 Binney, 353; Robinson vs. Crowder, 4 McCabe, 519. See also Story's Conflict of Laws.

10. There was no motion for a judgment *non obstante veredicto* to be overruled, and therefore there is no ground for the assignment of error which complains of the overruling such motion. The motion to discharge the garnishee and in arrest of judgment are equivalent, and raise the same questions, and bring under review the same part of the record and facts admitted and found. In denying these motions there is no error. The allegations and interrogatories are sufficient in law. The pleadings admit the judgment in New York, which being in an action commenced after the attachment levied, is no bar to the recovery against the garnishee. The verdict determines that the funds were at the time of the attachment levied, the property of the defendant and the value thereof. The record, therefore, warrants the judgment. Whether a foreign corporation can be sued in attachment, or a domestic corporation summoned as garnishee, is not a question involved in either motion; and if it had been, was correctly decided for the reasons and upon the authorities above given and referred to.

11. The merits being with the plaintiff below, as already shown, there is no pretence for a new trial, and the motion of the appellant was properly overruled.

CROCKETT & BRIGGS, for Appellee.

POINTS AND AUTHORITIES.

1. There is no proof that receivers were ever *legally* appointed by any competent tribunal in Wisconsin, to wind up the affairs of the Mineral Point Bank.

2. That if receivers were legally appointed by the authorities of Wisconsin, prior to the garnishment, and as such the receivers had the custody of the certificates of deposit, nevertheless the fund which was due upon the certificates, being found in this State, and subject to our laws,

was liable to attachment by creditors of the bank, not citizens of Wisconsin. Ogden vs. Saunders, 12 Wheaton, 358, &c.

3. That although upon their face the certificates were payable, on *their return* to the office of the garnishee, the fund was liable to attachment in the hands of the garnishee, notwithstanding the attaching creditor had not the custody of the certificates, and though they may never be returned. If this be not the law, no fund can be reached by attachment, where the garnishee has an outstanding obligation for the debt.

4. That although the money which was deposited by Knapp, and for which the garnishee issued certificates of deposit to him as cashier of the Mineral Point Bank, may not before the deposite, have belonged to the Bank, yet when deposited by Knapp, to his own credit as *cashier*, it became the property of the Bank, so as to create the relation of debtor and creditor between the garnishee and the Bank.

5. That Cohen, by his attachment, acquired a lien upon the fund from the date of the service of the garnishment, and that no subsequent transfer by the Bank, its officers or agents, of the certificates of deposit, can impair this lein, and especially as the certificates were payable *in currency* and therefore not negotiable, on a footing with bills of exchange. Farwell vs. Kennett, 7 Mo. Rep. 595.

6. That Cohen's lien having attached, the transfer of the certificates to Brooks, conferred no title, and having no title, his subsequent recovery of a judgment in New York, against the garnishee, does not operate a divesture of Cohen's lien, and consequently the judgment in New York, is no bar to Cohen's recovery. 13th Pickering 511; Sargeant on Attachment 145; Embree & Collins vs. Hanna, 5 John. 101.

7. That at the date of the garnishment, Brooks had acquired no title to the certificates :

*First*, Because there is no proof that the receivers, (so called) and under whom Brooks claims, had any legal authority to make the transfer.

*Second*, Because at the date of the garnishment there being *three* Receivers, only *one* of them had made the transfer to Brooks, subject to the ratification of the other two, and these two so far from ratifying, repudiated and annulled the contract, and subsequently—long after the garnishment—entered into a new contract with Brooks.

*Third*, Because at the date of the garnishment, only one of the Receivers had made the transfer to Brooks, and their powers, if they had

The St. Louis Perpetual Insurance Company vs. Hyam H. Cohen.

any, being joint, less than a majority could perform no act to bind the assets of the Bank.

*Fourth,* Because the proof shows that the transfer from Banks, one of the receivers, to Brooks, was made subject to the ratification of the other two, and at the date of this garnishment, this ratification had not only not been made, but they had actually disaffirmed the contract.

8th. That whether the fund at the date of the garnishment, was the property of the Bank, or had become the property of Brooks, was a question of fact for the jury, who found the issue in favor of Cohen, and the court will not now disturb the verdict, unless plainly against the weight of evidence, which it is not.

9. That the statement of Jones & Bequette, two of the witnesses, as to the appointment of receivers, cannot be objected to by the garnishee now :

*First,* Because it does not appear in proof that the appointment was made in writing or of record.

*Second,* Because these statements were made by way of inducement and explanation only.

*Third,* Because this portion of the evidence did not tend to the benefit of Cohen, or to the injury of the garnishee ; on the contrary a chief branch of the garnishee's defence were based exclusively upon these statements.

10th. That the copies of the contracts annexed to the deposition of Jones, were improperly admitted in evidence.

*First,* Because the originals were properly in the custody of the witness, and so far as the proof shows, were his private papers, of which he was entitled to retain the custody.

*Second,* Because the witness was out of this State, beyond the reach of the process of our courts, and therefore could not be compelled to produce the originals, upon "*supœna duces tecum.*" Boone vs. Dyke's legatees, 3 Mon. R. 532 ; Bailey vs. Johnson 9 Cowen 115 ; May's Adm'r vs. May, 1 Porter Rep. 229 ; United States v. Reyburn, Peters Rep. 352 ; 13 John. Rep. 58.

11th. That the certificates having been accurately described in the answer of the garnishee and their existence admitted, it was competent for the witness Jones, to speak of them for the purpose of identifying them, and by way of inducement, without producing them, and especially as the answer of the garnishee shows that they were not in the power of the party.

The St. Louis Perpetual Insurance Company vs. Hyam H. Cohen.

Scott, J. delivered the opinion of the court.

Cohen, the appellee, brought suit against the President, Directors, and Company of the Bank of Mineral Point, and summoned the St. Louis Perpetual Insurance Company, the appellant, as garnishee. The service of the garnishment was made on the 24th Nov. 1841. To the usual interrogatories, the Insurance Company filed the following answers : This garnishee for answer to the allegations of the plaintiff says, that at the time this garnishee was summoned in this case, this garnishee had not, nor has it since, nor has it now in its possession, custody or charge, any lands or tenements, goods or chattels, moneys, credits or effects, belonging to the said defendant; nor has it since been, nor is it now indebted to the said defendant, in any amount whatever, except as may be hereafter in this answer stated. This garnishee to the first interrogatory answers : That at the time the garnishee was summoned in this case, it had no lands or tenements, goods or chattels, rights, moneys, credits or effects in its possession, custody or charge, belonging the defendant, nor has it at any time since had. To the second and third interrogatories, this garnishee answers: That at the time it was summoned in this case, it was not indebted to the said defendant in any sum of money, nor has it since been, nor was it, nor has it since been bound to the defendant in any contract for the payment of any sum of money not yet due, except as hereinafter stated. This garnishee says, that on the seventeenth day of May, in the year eighteen hundred and forty-one, Samuel B. Knapp, who was then cashier of the Bank of Mineral Point, deposited with this garnishee the sum of nine thousand two hundred dollars, and received from this garnishee five certificates of deposit; one for five thousand dollars, one for one thousand dollars, one for eleven hundred dollars, one for twelve hundred dollars, and one for nine hundred dollars, all dated the said seventeenth day of May at St. Louis, in each of which it was certified that S. B. Knapp, Cashier, had deposited in the office of this garnishee, the sum in each certificate specified, to the credit of S. B. Knapp, cashier, payable to his order on the return of that certificate ; that for five thousand dollars being payable one month after date, and all the others payable one day after date. "One of which said certificates is payable in Kentucky bank notes, and all the others are payable in current bank notes." This garnishee further answers, that since the above mentioned certificates were given, they have been negotiated as this garnishee has been notified, and they are now held by a firm in the city of New York, but this garnishee is not informed

who was the owner of the said certificates, at the time this garnishee was summoned in this case. This garnishee leaves this question to be decided by the proper tribunal, whether the money thus deposited is subject to the attachment in this case, and requires the proof of all the facts which will authorize a judgment to be entered against this garnishee. This garnishee states, "that the certificates before mentioned, have been presented at the office of this garnishee for payment, by the agents of the firm of Jacob Little & Co. in New York, and payment was refused by this garnishee, because of the pendency of the attachment in this suit, and the said Little & Co. have commenced a suit thereon in the city of New York, against this garnishee, and have attached the funds of this garnishee in that city, to the amount of said certificates;" and afterwards on leave filed the following additional answer: "This garnishee further answering the said interrogatories and allegations says, that since the filing of its original answer in this cause, the suit which at that time was pending against this garnishee, and mentioned in said answer as pending against it in the city of New York, in the name of Jacob Little & Co. that is, Jacob Little & Edward Little, has been prosecuted to final judgment, and such proceedings were therein had, in the supreme court of judicature of the people of the State of New York, that final judgment was rendered in said court against this garnishee in the said suit, for the sum of ten thousand nine hundred and seventy-nine dollars and sixty cents, including the damages, costs and charges, which appears by the record of the said suit remaining in the said supreme court, an exemplification of which is herewith exhibited, whereby it appears that said judgment for the amount aforesaid, was signed on the ninth day of May, in the year 1844.

Afterwards a jury was sworn and the following deposition was read on the part of the plaintiff: David Walter Jones, of lawful age, being sworn and examined on the part of the plaintiff, deposeth and saith: "I know James W. Doughty, the plaintiff. I was at one time an officer of the Mineral Point Bank, was President of the Mineral Point Bank, for about two years previous to December, 1840—in December 1840, I sold my stock in said bank, and ceased to have any further control as an officer of said bank. I however transacted business for Samuel B. Knapp, then cashier of said bank, during the winter of 1840 and 1841. Chief Justice Dunn, appointed Paschall Bequette, John Dunn and William H. Banks, as trustees or receivers, to wind up the affairs of the bank. On or about the 24th of September, 1841, I was present with two of the receivers, namely Bequette and Banks, when they entered

into an arrangement or compromise with Samuel B. Knapp. They, the receivers, had in their possession at that time five certificates of special deposit of the St. Louis Perpetual Insurance Company, dated 17th of May, 1841,—the deposites were made by Samuel B. Knapp, cashier, to the credit of himself. One for nine hundred dollars, one for one thousand dollars, one for eleven hnndred dollars, one for twelve hundred dollars; amounting in the aggregate to four thousand and two hundred dollars, which four were payable one day after date, and one for five thousand dollars, payable one month after date, all of them signed J. Smith Homans, cashier of the St. Louis Perpetual Insurance Company, numbered 354, to 358, inclusive. Knapp was present and claimed these certificates as his property, the receivers at the same time claimed them as the property of the bank; he Knapp and the receivers, then entered into an arrangement in my presence, by which Knapp was to have the certificates before described, on his giving approved security to the receivers, for the payment of seventy thousand dollars and upwards, of the bills of the bank of Mineral Point, or of the indebtedness of the bank, for which Knapp was, or pretented to be, individually responsible, within six months from the date of agreement. I dont know whether Knapp gave the secuiity, but Banks, one of the receivers; told me while we were in Rochester, that he had settled the difficulty with Brooks, and Banks also told me that Brooks had got possession of the certificates. The said certificates were held by the receivers on the 24th September, 1841, as the property of the bank, and were retained as such property, until the arrangement with Brooks, which took place in October, 1841. I do not know where the certificates are now, nor do I know of any person claiming them or having possession of them at this time. I know nothing further in relation to the matter, save what is contained in the article of agreement, and transfer or ratification of a former transfer, entered into on the 25th February, A. D. 1843, by and between Paschall Bequette and John Dunn, two of the receivers aforesaid, and Samuel B. Knapp, as agent of Lewis Brooks, duplicates of which are now in my possession, and copies of which I herewith submit as part of my testimony, marked A and B, and having my signature thereon.—D. Walter Jones.

"Article of agreement made and entered into this 25th of February, A. D. 1842, by and between Paschall Bequette and John Dunn, receivers of the bank of Mineral Point, of the one part, and Lewis Brooks, by Samuel B. Knapp, his agent, of the other part; witnesseth, that whereas there was an arrangement entered into between the said Lewis Brooks and William H. Banks, one of the receivers of the bank

of Mineral Point, at Rochester, in the State of New York, in the month of October, A. D. 1841, touching certain assets of the Bank of Mineral Point, which said arrangement was partially set aside by said William H. Banks and Paschall Bequette, two of the receivers of the bank of Mineral Point at Mineral Point, Wisconsin, in the month of March, A. D. 1842, by which certain assets of the bank of Mineral Point, were surrendered to the said Brooks, on his payment to the said receivers of a certain amount of the notes or bills of the bank of Mineral Point; and whereas it was left optional with said Brooks to appropriate the proceeds of twenty-nine hundred pigs of lead, in the hands of Augustus Overhill & Co. and eleven internal improvement bonds of the State of Illinois, in the hands of Messrs. Nevins, Townsend & Co. of New York, in exchange for certain certificates of deposit of the Perpetual Insurance Company of St. Louis, Missouri, to correspond in amount with the sum received from the said Lead and State bonds. Now these presents witnesseth,—That the said receivers do surrender unto the said Brooks, the said certificates of deposit, the said twenty-nine hundred pigs of lead, and the said internal improvement bonds of the State of Illinois, to have, hold, use, possess and enjoy, in his own right and for his own benefit, without any recourse whatever, on them the said receivers, or the said bank of Mineral Point, in any shape whatever, and the said receivers agree to execute a release to that effect, so far as affects the twenty-nine hundred pigs of lead: and the said Brooks agrees on his part to pay the said receivers on the signing thereof, the sum of twenty-five hundred ($2500) dollars, in par funds of the city of Rochester and State of New York, and further to forego all claims that he may have on the said receivers or the said bank of Mineral Point, for any warranty or guaranty given by them or any of them to him at any time whatever, or for any other promise to save him harmless on certain drafts drawn by G. W. & J. Atchison, in favor of Samuel B. Knapp, and endorsed by said Knapp to the said Brooks, and White & Smith; the said receivers on their part, so far as they or the said bank of Mineral Point is concerned, releasing the said Brooks and the said White and Smith, from any liability as endorsers on said drafts. The said Brooks further agrees, and by these presents guaranties, that inasmuch as White & Smith, of St. Louis, being the holders of a package of bank notes of the bank of Mineral Point, and belonging to the said bank of Mineral Point, and which package, containining about nineteen thousand ($19,000) dollars, said Brooks has ordered said White & Smith, to pay or hand over to the said receivers of the bank of Mineral Point, compliance with which order was refused by White

& Smith, on the ground of liability as endorsers of said Brooks, on certain drafts drawn by G. W. & J. Atchison,—now the said Brooks stipulates and agrees that he holds himself bound to stand between White & Smith and all liability incurred by them as endorsers for him, and all liability of whatever nature incurred by said White & Smith for him, shielding them fully from all or any payment on such liabilities, and said Brooks pledges himself, that he will truly, *bona fidely*, and in good faith, lend all reasonable assistance to said receivers in procuring the delivery of said package of bank notes, and guaranty the receipt by said receivers of said bank notes, so far as his own act may be an obstacle in the way of receiving the same. The said parties hereby ratify and confirm all the parts of the arrangements and settlememts made by the said receivers and the said Brooks at Mineral Point, so far as the same do not contravene any of the provisions of these presents, and the said parties do make and design to make, these presents a full and complete settlement of all matters between them of whatever nature. In witness whereof, we have hereunto and to a duplicate of these presents, set our hands the day and year first above written, Paschall Bequette, Jno. Dunn, receivers, M. Point bank, Samuel B. Knapp, agent for E. Brooks."

"For value received, we do hereby relinquish in favor of Lewis Brooks, and do ratify and confirm to him the transfer made by William H. Banks, acting receiver of the bank of Mineral Point, all our rights and interests to certain certificates of deposit issued by the Perpetual Insurance Company of St. Louis, Missouri, and dated the —— day of May, A. D. 184 , amounting to nine thousand two hundred ($9,200) dollars, and on which suits by attachment have been commenced by Messrs. Jacob Little & Co., of New York, against said Perpetual Insurance Co. of St. Louis, Mo., which suits are now pending in the courts of New York; and we also transfer and assign for value received, all our right and interest in eleven internal improvement bonds of the State of Illinois, heretofore claimed by us, in the hands of Messrs. Nevins, Townsend & Co. of New York; and we do also transfer and assign for value received, all our right and claim to twenty-nine hundred (2,900) pigs of lead, or the proceeds thereof, shipped by G. W. & J. Atchison, to Augustus Overhill & Co., assigned to Samuel B. Knapp, and heretofore claimed by us, the property of the proceeds thereof being now in the court of chancery in the State of New York, hereby completely and irrevocably vesting in said Lewis Brooks all our rights and interests in the premises above transferred and assigned, without any recourse on us or the bank of Mineral Point, in any shape what-

ever, Paschall Bequette, John Dunn, receivers Mineral Point bank. Mineral Point, Wisconsin, February 25th, 1843."

The plaintiff also read in evidence the following deposition of Paschall Bequette. "I don't know James W. Doughty, the plaintiff. I was one of the receivers appointed by Chief Justice Dunn, to settle the affairs of the Mineral Point bank. I remember being present with another of the receivers, namely, William H. Banks, on or about the 24th September, 1841. David W. Jones was present; we were arranging the affairs of the bank; there were among other bank property, in the possession of William H. Banks, which we as receivers claimed as belonging to the bank, five certificates of deposit for a sum over nine thousand dollars, as well as I can recollect, they were given by the St. Louis Perpetual Insurance Company. I do not recollect the exact amount or number, but to the best of my knowledge and recollection, they were the same certificates described by David W. Jones, in his deposition, which is now taken. On the day in question, Samuel B. Knapp, the cashier of the Mineral Point bank, in the same conversation, claimed the certificates as his private property, which we opposed. William H. Banks, the acting receiver, held the possession of said certificates, as the property of the bank, until some time in October, 1841, when in accordance with the arrangement entered into previously by Banks, (and which was referred to by David W. Jones, in his deposition,) he, William H. Banks, transferred them to Lewis Brooks, uncle to Samuel B. Knapp, since which time I know nothing of them. I never individually held possession of the said certificates, but I am confident that William H. Banks, one of the receivers, had possession of them as the property of the Mineral Point bank, on or about the 24th September, 1841, and they continued in the possession of William H. Banks, until some time in October following—this to the best of my recollection—the transfer by Banks to Brooks was afterwards ratified by the other receivers, I believe."

These depositions were taken in Wisconsin territory, and the garnishee objected to the reading of those parts of them in which mention is made of the appointment of receivers by Chief Justice Dunn, and that portion in which the witness speaks of the contents of the certificates of deposit. These objections were overruled. The garnishee also objected to the reading of the copy of the agreement, annexed to the first deposition, but this objection was not sustained.

Shurlds, a witness introduced on the part of the plaintiff, testified as follows: "That he was the cashier of the Bank of the State of Missouri, and that for a number of years he had been familiar with the course of

banking business. That he knew Samuel B. Knapp in 1840 & 1841, and that the said Knapp did business with the Bank of Missouri, to some extent previous to 1840, as cashier of the Bank of Mineral Point ; that said Bank declining in credit, the Bank of Missouri did no business with that Institution after the year 1840. That the cashier of a bank was the acting officer in making deposits in other banks, when such deposits are made, and in drawing checks or bills for the same. The general custom in banking is to sign the name of the cashier, in making a check, and to make it payable to the order of the cashier, when drawn in favor of another bank, of which he, the payee, is cashier. If a deposit is made by an individual, of course it is payable in his name or according to his direction. It is the custom of the Bank of Missouri, and of banks generally, to keep and enter in the books, the accounts between one bank and another, in the name and style of the bank, and not in the name of the cashier. The printed checks of the Bank of Missouri, for the use of the customers, are addressed to the cashier of the Bank of the State of Missouri, though checks are frequently drawn by persons, addressed to the bank itself, without the word "cashier." When certificates of deposit or checks, or bills, are drawn by one bank in favor of another bank, they are usually drawn in the name of the cashier, to the order of the cashier of the other bank, and not in the corporate name of the bank itself. Witness being cross-examined by the counsel for garnishee, testified : The accounts of the Bank of Missouri with other banks, are not kept in the name of the cashier, but in the name of the bank itself, with which it has an account ; that he knows of no instance of a check in favor of a bank being drawn, except in favor of the cashier, by name ; one of the reasons, probably of this is, and the effect also to enable the cashier to endorse the paper and transfer it, without further authority of the bank or its directors. Checks between one bank and another are generally given to transfer funds, and for the liquidation of balances. Certificates of deposit are not given between banks, for the transfer of funds nor for the liquidation of balances. They generally contain on their face a stipulation for the presentation of the certificate itself, with the order of the person, or the persons, through whom the holder claims to be entitled to payment. I however seldom or never issued any certificates of deposit, nor have I seen any issued by one bank, in favor of the cashier of another bank, for money deposited by the bank. The counsel for the plaintiff asked the witness at the close of the examination in chief, as a matter of skill and professional knowledge, what he would understand to be the meaning of a paper or instrument expressed on its face

to be payable to S. B. Knapp, cashier, and whether it would be understood to mean that the instrument was payable to S. B. Knapp, in his official, or in his private capacity, or whether it would, as a technical matter, be taken decidedly either way, or might be taken both ways? To which question the counsel for the garnishee objected, and the objection was sustained by the court, and the plaintiff excepted to the decision, and his exception was allowed. On re-examination of witness by plaintiff, witness stated as follows: "In negotiating or settling a balance between banks, I draw a check or bill of exchange in favor of the cashier. I know of few instances of a certificate of deposit being asked for, or given for a deposit made by a bank; it is wholly against the custom of banks."

Loker, a witness for the plaintiff, testified as follows: "In 1841, and some time previous thereto, I was engaged in exchange business in St. Louis. Kentucky notes in the spring of 1841, were from two to three per cent. discount, and they were current, and also the notes of the Bank of Illinois. Currency was then in May, 1841, from 5 to 7 per cent. discount below specie; in November, 1841, current bank notes were *three* or *four* per cent, discount. Currency consisted then mostly of Illinois, Indiana and Kentucky bank notes.

"I knew S. B. Knapp before the spring of 1841. Mineral Point money began to be discredited in the spring of 1841. He transacted business with me, as *cashier* of the Mineral Point Bank. I am familiar with the custom of banks, in drawing checks, bills and certificates of deposit. Certificates of deposit are generally in the name of the cashier, when made by a bank; they are signed by the cashier or teller in his name as cashier, and when made payable to another bank, they are made payable to the cashier by name, and not to the bank by its corporate name. The cashier of a bank is the acting money officer, and he deposits and checks in his own name, as cashier, the word "*cashier*" being added to his name. I do not recollect an instance where a cashier of a bank made a deposit on his own account, and used the same official style, adding the title of cashier, as when doing it in his official capacity. I was clerk in the exchange office of S. H. Mudge & Co., in the spring of 1841, and S. B. Knapp had some transactions with Mudge & Co. that spring."

On cross-examination witness testified as follows: "I continued the same business, and am still teller in the exchange office of Clark & Brothers in St. Louis, who succeeded Mudge & Co. I never was a clerk, or otherwise employed in a bank. I never saw a certificate of deposit made by one bank in favor of another bank, to my recollection,

The St. Louis Perpetual Insurance Company vs. Hyam H, Cohen.

nor a certificate of deposit made by the cashier of one bank to the cashier of another bank. The account was kept in the office of Mudge & Co., in the name of Samuel B. Knapp, cashier; and I do not recollect whether the account was entered in the books in the name of S. B. Knapp, with the full corporate name of the Bank of Mineral Point. When we know the cashier personally, we do not use the full name of the bank, in entering the account in the books, but if the cashier is not personally known, we enter the name of the bank. Mudge & Co. did business with three or four banks. There is no standing rule on the subject of keeping accounts with banks. I do not recollect the names of all the banks we kept an account with. One was the Cairo Bank, and the account was kept in the books, with the name of the cashier, and also the full name of the bank added. I believe another was a bank in Illinois. I do not recollect the other bank. I think the deposits were made and called for by these banks in the name of the cashiers, without the addition of the name of the bank.

The garnishee read in evidence the following sections of an act concerning corporations, taken from the Rev. Laws of Wisconsin Territory:

§ 2. All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless be continued bodies corporate for the term of three years after such limitation or dissolution, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business, for which such corporations have been or may be established.

§ 3. When the charter of any corporation shall expire, or be annulled, as provided in the preceding section, the district court of the county in which such corporation may be, on application of any creditor of such corporation, or any stockholder or member thereof, may appoint one or more persons to be receivers or trustees of and for such corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend in the name of the corporation or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by such corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation, and the powers of such receivers may be continued beyond the said three years, and as long as the court shall think necessary for the purposes aforesaid.

28

§ 4. The said court shall have jurisdiction in chancery of such application, and of all questions arising in the proceedings thereon, and may make such orders, injunctions and decrees thereon, as justice and equity may require.

§ 5. The said receivers shall pay all debts due from the corporation, if the funds in their hands shall be sufficient therefor, and if not they shall distribute the same ratably among all the creditors, who shall prove their debts in the manner that shall be directed by any order or decree of the court for that purpose; and if there shall be any balance remaining after the payment of said debts, the receiver shall distribute and pay the same to and among those who shall be justly entitled thereto, as having been stockholders or members of the corporation, or their legal representatives.

The garnishee asked the following instructions, the first five of which were given, and the remainder refused, to which an exception was taken:

"1st. The issue which the jury is sworn to try, embraces nothing but the naked question, whether the property and funds mentioned in the answer of this garnishee, were or were not the property of the defendant, (the President, Directors and Company of the Bank of Mineral Point,) at the time said garnishee was summoned in this cause, and not before or after that time,

2d. In the trial of this issue the burden of proof lies upon the plaintiff, and unless it has been proved to the satisfaction of the jury, that at the time the garnishee was summoned in this cause the property and funds mentioned in the answer of this garnishee, were the property of the defendant, the jury ought to find the issue for the garnishee.

3d. There is no testimony before the jury, proving or tending to prove any indebtedness of the garnishee to the defendant, or that the garnishee had any property or funds in its possession, belonging to the defendant, except only the testimony touching the certificates of deposit, which have been mentioned in evidence.

4th. As to said certificates of deposite, if the jury believe from the testimony that said certificates were made by this garnishee, in favor of, and delivered to Samuel B. Knapp, (whether with or without the word "cashier" to his name,) and payable to him or his order, the said certificates ought not to be taken by jury as evidence of indebtedness by the garnishee to the defendant, unless it also appear to the satisfaction of the jury, either that the said Knapp did, by endorsement or otherwise, order the contents of said certificates to be paid to said bank,

or that the funds deposited by said Knapp, and for which said certificates were given, did in fact belong to the said bank.

5th. Unless the jury believe from the testimony that funds deposited by Knapp with the St. Louis Perpetual Insurance Company, and for which the said certificates were given, did in fact, when deposited, belong to the said bank of Mineral Point, they ought to find the issue for the garnishee.

6th. Even if the jury believe from the testimony before them that the said certificates of deposit were the property of the defendant, the bank of Mineral Point, and in possession of said bank, its officers or servants, in the Territory of Wisconsin, where said bank was located, still if they also believe from the testimony that said certificates before the garnishee was summoned in this cause, were transferred to, and came to the possession, and under the charge of receivers or trustees of and for said bank, appointed under the laws of the territory of Wisconsin, to be by them collected, administered and disposed of according to the laws of said territory—then said certificates and the funds therein mentioned, were not subject to attachment in this action, and the issue ought to be found for the garnishee.

7th. If the jury believe from the evidence, that the said certificates of deposit were on their face made payable only at the office of the garnishee, in the city of St. Louis, and payable there in a currency other than lawful money, then this garnishee was not subject to any action, either as garnishee at the suit of this plaintiff, or as defendant at the suit of any holder of said certificates, until the said certificates should be presented at the office where payable, and opportunity afforded this garnishee to redeem the same in currency according to contract."

The plaintiff then asked the following instructions, the first six of which were given, and the remainder refused :

1st. If the jury belive from the evidence that the certificates of deposit, or any of them, mentioned in the answer of the garnishee, were, on the day on which the garnishee was summoned in this cause, the property of the President, Directors and Company of the bank of Mineral Point, the defendant, and were at said-time unpaid, they will find that at said time the garnishee was indebted to said defendant, notwithstanding they may also find that said certificates were at said time in possession of receivers appointed by the judicial authorities of the territory of Wisconsin, to be by said receivers held and disposed of according to the laws of Wisconsin.

2d. That the transfer of said certificates by the judicial authorities

of Wisconsin to receivers there appointed, does not divest the title to said certificates out of the said bank of Mineral Point, so as to defeat the operation of this attachment to hold the garnishee as a debtor of the bank.

3d. That if the jury believe from the evidence that Samuel B. Knapp deposited money or bank notes with the St. Louis Perpetual Insurance Company, before said Insurance Company was summoned as garnishee in this case, and that said Insurance Company issued certificates of deposit therefor, payable in current bank notes or Kentucky bank notes, to the order of Samuel B. Knapp, cashier, and that said deposit was made by said Knapp, not to his own credit as an individual, but in making said deposit he was acting in his official capacity, as cashier of the bank of Mineral Point, and the same said certificates were issued to him in his capacity of cashier, and if the said certificates at the time the said garnishee was summoned, continued to be in the custody and possession of the said bank, its officers or agents, not having been assigned or transferred for a valuable consideration, to any other person by said bank or its authorized agent; in that event the jury should find for the plaintiff, notwithstanding they shall also believe from the evidence, that the money or notes deposited by Knapp, with the said Insurance Company, were not before they were deposited, the property of said bank.

4th. If the jury find for the plaintiff under the first instruction prayed by the plaintiff, the measure of their verdict will be the value of the certificates of deposit in gold and silver, after deducting from their amount such proportions as they believe from the evidence should be deducted to bring them to par with gold and silver.

5th. In the trial of the issue before the jury, the matter of the judgment in the supreme court of New York, is not before them, and cannot properly enter into their consideration.

6th. That whether these funds were the funds of the said bank, or the private funds of Samuel B. Knapp, before they were deposited with this garnishee, if they were deposited to the credit of the cashier of said bank, and not to the credit of Samuel B. Knapp, in his private individual capacity, they thereby became the property of said bank, if they were not before; and if said certificates were in the possession of said bank, her agents or receivers as the property of the bank, at the time this attachment was levied and this garnishee summoned, the jury ought to find for the plaintiff.

7th. If the jury believe from the evidence that said certificates of deposit were the property of said bank of Mineral Point, at the time

when this garnishee was summoned, or since that time, they are instructed that no subsequent assignment, endorsement, or transfer of them, by said bank, her agents or receivers, to any other person could pass any title to such assignee, so as to defeat this attachment, and that even a payment of them by this garnishee, to such subsequent assignee, could be no discharge of the liability of the garnishee to this plaintiff, and no bar to recovery in this case.

8th. If the jury believe the evidence show the certificates in question to have been the property of the bank aforesaid, on the 24th September, 1841, or between that time and the 1st of October, 1841, they will presume said certificates so to have continued the property of the said bank until the *contrary* is distinctly made to appear from the evidence, and an actual legal and valid and complete transfer is proved.

The garnishee objected to the instructions given to the jury at the instance of the plaintiff.

We have assumed that the last three instructions asked by the plaintiff were refused, although it appears on the record that they were both given and refused. It is the duty of the party appealing to show by the record that error has been committed by the court below. The presumption is in favor of the correctness of the proceedings of that court, and if. a record is susceptible of two interpretations, that will be given it which will sustain the judgment of the inferior court.

The jury found a verdict for the plaintiff, and after an unsuccessful motion for a new trial, and in arrest of judgment by the garnishee, judgment was entered on the verdict, from which the garnishee appealed to this court.

That the debt claimed by a plaintiff has been recovered by the process of attachment at the suit of another, has long been held to be a good plea at the common law. 1st Lord Raymond 180; 1st Sal. 291. There is no contrariety of opinion on this subject in relation to debts which are not negotiable, nor as to bills of exchange negotiated after maturity. A difference of opinion is entertained as to bills of exchange or negotiable promissory notes, negotiated before they are due, and it is held by some, that debts evidenced by such securities, are not subject to the process of attachment. Hull. vs. Blake, 13th Mass. Rep. 153; Merrian vs. Rundlette, 13th Pick. Rep. 511; Baylies vs. Houghton & Co., 15 Ver. 626. In the case of Scott & Rule vs. Hill & McGunnegle, where the maker of a negotiable promissory note, was summoned as a garnishee in a suit against the endorsee, the majority of the court held that the debt could not be subjected to the payment of the plaintiff's demand, unless it was shown that the payee held the se-

curity at the time the process was served on the garnishee. An inno-
cent holder of a bill of exchange, negotiated before maturity, is entitled
to recover, and to shut out almost every equitable defence. This doc-
trine is founded on the commercial policy of sustaining the credit and
circulation of negotiable paper. But as to choses in action or paper
not negotiable, the assignee takes it subject to all the defences the
maker may have against it before notice of the assignment. To the as-
signee of choses in action, the rule " *caveat emptor,*" applies. With
regard to these debts, the doctrine asserted by Justice Story in his Con-
flict of Laws, § 396, is replete with justice, and secures in a plain way
the rights of an assignee against an attaching creditor, and amply pro-
tects the garnishee. That doctrine is this: that an assignment operates
*per se,* as an equitable transfer of the debt. Notice is indispensable to
charge the debtor with the duty of payment to the assignee; so that if
without notice he pay the debt to the assignor, or it is recovered by
process against him, he will be discharged from the debt. But an ar-
rest or attachment of the debt in his hands by any creditor of the as-
signor, will not entitle such creditor to a priority of right, if the debt-
or receive notice of the assignment, *pendente lite,* and in time to avail
himself of it, in discharge of the suit against him. Judge Tucker car-
ries the doctrine further, and maintains that if the debtor has notice at
any time before payment, he should take steps to prevent the execution
of the judgment. 2 Com. 107.

The foregoing is the doctrine of the common law, uninfluenced by
statutory regulations. Our statute, relative to the assignment of bonds
and notes, provides that the obligor, or maker, shall be allowed every
just set-off and discount against the assignee or assignor before as-
signment. In the case of Bates vs. Martin, 3 Mo. Rep. 259, (367)
this court held that a payment made to the payee of a note by the ma-
ker, after the assignment of the same, and before the maker had any
notice of the assignment, is not a good defence to an action by an as-
signee of the note. Thus it will be seen that our statute alters the
common law relative to the effect of an assignment of choses in action,
at least where they are evidenced by a bond or note. The effect of this
alteration, is to put debts secured by bonds or notes not negotiable, as
to their liability to the process of attachment, upon the same footing
with those secured by bills of exchange. The assignee of a bond or
note not negotiable, is as secure against any defence by the maker
which may arise after the assignment, although no notice of the assign-
ment is given, as the *bona fide* holder of a bill of exchange negotiated
before maturity. The reason which, in the case of Scott & Rule, in-

duced the court to hold that the attaching creditor must show that a negotiable security was in the hands of the defendant at the time of the service of the attachment, will require us to exact evidence from a plaintiff for the security of a subsequent assignee, that a bond or note not negotiable is in the hands of the payee or assignee, who is defendant in the attachment. The assignee's right is as legal and perfect without any notice of the assignment to the maker, as that of the endorsee of a negotiable security.

Some parts of the depositions were objected to as being incompetent evidence, and exceptions were taken to the reading of the sworn copy of the agreement, the original of which appeared to be in the hands of individuals in the territory of Wisconsin.

The introduction of the sworn copy stands on the same principle, as the proof of the hand writing of a subscribing witness who is beyond the jurisdiction of the court. In the case of Boone vs. Dyke's legatees, 3 Mon. 532, parol evidence of the contents of a written partition of slaves was admitted as competent testimony, on the ground that the paper was in the State of Virginia. The same doctrine is sanctioned in the case of Bailey vs. Johnson, 9 Cow. 115; United States vs. Reyburn, 6 Peters Rep. 352.

The refusal of the court to strike from the deposition that portion of it in which the witness speaks of the appointment of receivers by chief justice Dunn, is not a matter of which the garnishee can complain. Abstracting it from the consideration of the jury, does not affect the plaintiff's right of recovery. When the object of the testimony contained in the depositions is considered, we cannot perceive the force of the garnishee's objection. The plaintiff's design was to show that the certificates of deposit, at the time of the service of the attachment, were in possession of the Mineral Point bank. For this purpose he shows they were in the hands of those who were called trustees or receivers of the company. It is a matter of perfect indifference whether they were rightfully or wrongfully with those agents, and the force of the evidence is not diminished by the admission that they were, without authority, in the hands of the receivers. The evidence shows where the certificates were and who claimed them, and is offered to prove that they belonged to the bank. The legality of the custody of those who held them, neither adds to nor detracts from its weight. As the law of Wisconsin read in evidence, required the appointment of receivers to be made by the district court of the county, if the object of the plaintiff had been to establish a transfer of the certificates to the receivers, the evidence would not have been competent; for as a court

can only speak by its records, and as the appointment was only authorized by the court and not by the chief justice, it could only be proved by the production of the record. Considered in the light for which it was offered, even had it not been strictly legal, we do not see in what manner the garnishee was prejudiced by it.

The same considerations are applicable to that portion of the deposition objected to, in which the witness speaks of the contents of the certificates. The object of the testimony was not to prove their contents. An inquiry arises, where and in whose possession was a paper at a particular time; on what principle is a witness prevented from describing a paper he saw, in order that a jury may determine whether it was the paper the subject of controversy? If a person is charged with having uttered forged notes, may not a witness describe a note he saw in the possession of the prisoner, in order to show that it was the same that had been uttered?

An opinion has been expressed as to the evidence relative to a transfer of the effects of the Mineral Point bank. But even supposing the evidence sufficient to establish the fact of an assignment, yet it is a principle of our law too firmly established to be shaken, that an assignment under the operation of foreign laws, will not operate to transfer the moveable property of the bankrupt or insolvent in any other country, and thus withdraw it from the process of the local foreign laws, by way of arrest, attachment or otherwise, issued in favor of the foreign creditors, in the country where the moveable property is situate. Story's Conflict of Laws, § 403. The principle here asserted shows that there was no error in overruling the 6th instruction asked by the garnishee.

If the 7th instruction asked by the garnishee and refused by the court, contained a correct legal principle, then it is obvious that no debt, whose existence is evidenced by a written instrument, can be attached in the hands of the maker of the instrument.

The object of the principle established in the case of Scott & Rule, is to prevent a debt from being attached in a suit against a defendant who is not entitled to that debt. The certificates of deposit were payable to the order of S. B. Knapp, Cashier of the Mineral Point Bank. The attachment in this cause was levied on the 24th of November, 1841. It appears that in October, 1841, the certificates were in the hands of Banks, one of the receivers, and that Knapp, although claiming them as his own, was an agent for Brooks, negotiating for them; that they were transferred to Brooks, and by Brooks to Little & Co. Now admitting that Knapp, as agent for Brooks, took them in bad faith and

under such circumstances as would not have affected the right of the bank, yet if Brooks passed them to Little & Co., who were ignorant of the rights of the bank or its receivers, is not their title better than that of the bank? From the manner in which this transaction has been conducted, is not the bank placed in that situation in which the principle applies, that if one of two innocent men must suffer a loss, it shall be borne, by him through whose conduct the loss has been occasioned? The bank by having taken the certificate in the name of Knapp, enabled him to commit a fraud; and if any loss is occasioned thereby, she should bear it. Suppose a debt is owing to A, and he takes a note for it, payable to B, agent for A. If B transfers this note to an innocent person, is not the title of that person better than A's? Is the circumstance that the certificates were payable to Knapp, as Cashier, sufficient to put all persons upon enquiry, and thereby affect them with notice? or is the effect of that circumstance determined by commercial usage, and to be weighed by the jury in ascertaining whether the paper was acquired *mala fide?* This would seem to be a matter for the consideration of a jury, and it will follow that so much of the third instruction, given at the instance of the plaintiff, as directed the jury that a transfer of the certificates could only be effected by the bank or its authorized agent, was not warranted in law.

We will consider at the same time the objections that a foreign corporation is not sueable in our courts, and that a corporation cannot be made a garnishee. The first of these questions does not arise on this record, and if it did it is clear that a garnishee cannot raise the objection. If the court has jurisdiction of the cause, a garnishee on no principle can take advantage of errors against the defendant. If a defendant waives or acquiesces in error committed to his prejudice, who shall be allowed to insist on it for him? The garnishee moved to dismiss the proceedings, on the ground that the defendant was a foreign corporation. That motion was overruled, and no exception was taken. It no where appears on the record proper that the defendant is a foreign corporation. How can the question then arise on motion in arrest of judgment? But where is the reciprocity in permitting foreign corporations to sue in our courts, and holding that they in turn cannot be sued in them, in the only mode in which they can be made liable out of the jurisdiction in which they are created? 9 N. H. 394. The Revised Statutes, p. 383, § 26, enacts, that when any subject matter, party or person, is described or referred to by words importing the singular number or masculine gender, several matters, and persons, and females, as well as males and *bodies corporate,* as well as individuals shall be

deemed to be included.   But it is said that a corporation cannot answer an oath.   If this objection has any force in it, then a corporation cannot answer in equity ; for the 7th sec. of the 2nd art. of the act concerning Practice in Chancery provides, "that every defendant shall answer full all allegations and interrogatories of the complainant, except such as are not required to be answered by reason of exceptions, plea, or demurrer thereto allowed, and the answer shall be verified by oath or affirmation;" and yet the act concerning Corporations recognizes their liability to suits in equity.   We must look to principles of law in order to ascertain how their answer is to be verified, and the same principles point to the mode of verifying an answer when made by garnishees.

The exemplification of the record, accompanying the garnishee's answer, which was read in evidence by the plaintiff, could not have been prejudicial to the garnishee.   Its influence, if any, was rather hurtful to the plaintiff.   The garnishee was entitled to no advantage in this suit, on account of the judgment in New York ; and the instruction relative to this record, given at the instance of the plaintiff, was, at most, harmless to the garnishee.

The other judges concurring, the judgment will be reversed.